IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTINA FEDERER,

   Plaintiff,

     v.

MIDLAND MORTGAGE CO.
a foreign corporation, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-2492-TWT

ORDER

This is a case alleging gender discrimination in the issuance of a home loan. It is before the Court on Defendants HSBC Bank USA, N.A. and Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. 18], Defendant Midland Mortgage Co.'s Motion to Dismiss [Doc. 19], and Defendant Brightstone Mortgage, Inc.'s Motion to Dismiss [Doc. 21]. For the reasons set forth below, Defendants HSBC Bank USA, N.A., and Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. 18] is GRANTED, Defendant Midland Mortgage Co.'s Motion to Dismiss [Doc. 19] is GRANTED, and Defendant Brightstone Mortgage, Inc.'s Motion to Dismiss [Doc. 21] is GRANTED.

I. <u>Background</u>

Plaintiff Christina Federer purchased real property at 4324 Big House Road, Norcross, Georgia 30092 (the "Property") on March 17, 2006. (Am. Compl. ¶ 30). Federer, an elderly woman, had a FICO score of 760, held less than $5,000 in debt, and owned real property in Huntington, West Virginia, worth approximately $300,000. (<u>Id.</u>) She obtained a loan for $416,000 to complete the purchase of the Property. (Am. Compl. Ex. C). Federer contends she was the victim of gender discrimination by the Defendants who manipulated the loan documents in order to issue her a subprime loan she could not repay even though she was qualified for a prime rate loan. (<u>See</u> Am. Compl. ¶¶ 32, 37).

The Plaintiff alleges that the loan application was altered without her knowledge to reflect that she had no income. (Am. Compl. ¶ 41). She also alleges that Defendant Brightstone's good faith estimates provided in advance of closing were significantly lower than the Truth in Lending disclosures made on the date of closing. (Am. Compl. ¶ 44). Similarly, the original loan application provided to the Plaintiff did not include prepayment penalties, but the March 17 truth in lending statement did include prepayment penalties. (Am. Compl. ¶ 66). Defendant Orchid requested a second appraisal of the Property in advance of closing without notifying the Plaintiff. (Am. Compl. ¶¶ 47-49). The second appraisal valued the Property at 1.9% below the

purchase price, and Defendant Brightstone required an additional $10,000 down payment. (Am. Compl. ¶ 49). The Plaintiff alleges that Brightstone falsely stated that the extra down payment was to conform the loan to the loan-to-value pricing structure that was already locked in when Brightstone actually made the statement "with the goal of inducing Plaintiff to pay an additional $10,000 down payment at a higher interest rate than originally quoted in the first good faith estimate." (Am. Compl. ¶ 50).

Additionally, the Plaintiff alleges that Brightstone altered the loan documents to state that the Property would not be the Plaintiff's primary residence. Brightstone deleted Federer's mark in her loan application indicating it was her primary residence and replaced it with a mark indicating the Property would be a second home. (Am. Compl. ¶ 53). Likewise, Brightstone altered the third page of the loan application to change the Plaintiff's response to indicate Federer would not occupy the Property. (Am. Compl. ¶ 54). Even though the Plaintiff marked in the "Disclosure Notices" section of the application that she would occupy the Property, she alleges Brightstone "switched in" an Occupancy Affidavit which the Plaintiff unwittingly signed at closing indicating the Property would be a second residence. (Am. Compl. ¶ 56).

The Plaintiff further claims that, at closing, Brightstone replaced the original loan application with a new loan application containing a rider preventing Federer

from renting or leasing the property. (Am. Compl. ¶¶ 57 & 58). Federer signed the new application at the direction of the closing attorney, and Federer alleges the closing attorney did not state at closing that he was representing the lenders. (Am. Compl. ¶ 69). The Plaintiff contends the final loan-to-income ratio on the loan, 78.58%, is predatory. (Am. Compl. ¶ 39). The Plaintiff also argues that subsequent holders and servicers of the loan must have been aware of its predatory nature and the discrimination underlying the loan. (Am. Compl. ¶ 79).

Defendant HSBC held the note and security deed on the loan on March 23, 2010, when it provided a notice of foreclosure sale to Federer. (Am. Compl. ¶ 81). The Plaintiff sought a loan modification, but was unable to obtain one because Defendant Wells Fargo denied her proposed modifications, even though they were consistent with Defendant Midland's modification parameters. (Am. Compl. ¶ 82). Finally, on May 14, 2012, Defendant Midland sent two conflicting notices to the Plaintiff, the first notice stating that a deficiency was due by June 14 or foreclosure proceedings would commence, and the second notice stating that the Plaintiff could lose her home if repayment was not arranged by May 28. (Am. Compl. ¶¶ 83-85). The Defendants contend the Plaintiff has not made a payment since December 2009.

(Def. HSBC's Br. in Supp. of Mot. to Dismiss, at 7 n.5).[1]  The Plaintiff filed this case on July 18, 2012, alleging discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."  Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading

---

[1] Defendants Opteum Financial Services, LLC, and The Bank of New York Mellon Corporation did not file motions to dismiss.  Accordingly, unless otherwise noted, references in this Order to "Defendants" only refer to the Defendants that have moved to dismiss.

stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

III. Discussion

The Plaintiff brings claims for discrimination in violation of the Fair Housing Act ("FHA") and the Equal Credit Opportunity Act ("ECOA") against all Defendants. Each moving Defendant argues that the Plaintiff's claims are time-barred under both the FHA and the ECOA.[2] The Plaintiff contends that her claims are not time-barred because she can invoke the continuing violation doctrine. The Court concludes that, even construing the facts in the complaint in the light most favorable to the Plaintiff, the Plaintiff has failed to plead specific facts capable of invoking the continuing violation doctrine.

---

[2] The Defendants additionally argue that the ECOA does not impose liability on assignees and servicers, that the contradictory allegations in the complaint require dismissal, and that the Plaintiff has not pled facts detailing any discrimination. Because the Court concludes that the Plaintiff's claims are time-barred, it will not address these additional arguments.

A. The Plaintiff's Fair Housing Act Claims are Time-Barred

Under the FHA, a plaintiff "may commence a civil action ... not later than two years after the occurrence ... of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). The Plaintiff alleges that she obtained the underlying loan under allegedly discriminatory conditions on March 17, 2006. Generally, under the FHA, the statute of limitations begins to run on the date the Plaintiff obtains a discriminatory loan. See Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 532 (7th Cir. 2011) (noting that the statute of limitations for the FHA began running when the predatory loan was issued). The Plaintiff filed this case on July 18, 2012, well over two years after the loan was issued.

However, the Plaintiff argues that the "continuing violation doctrine" delayed the limitations period applying to her. "[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely." Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-381 (1982); see also Center for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006). "The courts that have found a continuing violation of the FHA have done so in cases involving multiple plaintiffs alleging multiple, specific, and ongoing acts of discrimination, on specific dates, as opposed to general assertions that the defendants engaged in

discriminatory practices." Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011). Once a defendant has demonstrated that a statute of limitations is applicable, the burden shifts to the plaintiff to demonstrate that an exception applies. Hawkins v. Hamlet, Ltd., No. 06-80754, 2007 U.S. Dist. LEXIS 53350, at *8 (S.D. Fla. Jul. 24, 2007) (quoting Blue Cross and Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1552 n.13 (11th Cir. 1990)).

First, the Plaintiff argues that the Defendants actively concealed the discriminatory animus of the loan and that the statute of limitations should not have started running until the Plaintiff could have been aware of the discrimination. See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1222 (11th Cir. 2001) (applying equitable tolling principles to the continuing violation doctrine). However, the Plaintiff does not identify anything occurring after the loan origination that served to disclose that the loan was discriminatory. She claims that Brightstone switched the documents at closing, in March 2006, and that Midland did not properly respond to a Qualified Written Request seeking more information about the loan in 2009. However, the Plaintiff signed the mortgage documents and made her mortgage payments through December 2009. Under Georgia law, a signatory to a contract is presumed to have read the contract. See Gill Plumbing Co. v. Jimenez, 310 Ga. App. 863, 873 (2011) (quoting Pioneer Concrete Pumping Svc. v. T&B Scottdale

Contractors, 218 Ga. App. 596 (1995) (noting that one who signs a document is bound to it as if they had read the document); Seckinger-Lee v. Allstate Ins. Co., 32 F. Supp. 2d 1348, 1354 (N.D. Ga. 1998) (holding that the plaintiff was bound as if he read the contract at issue)). The Plaintiff is thus presumed to have known the details of her loan. Even without this presumption, however, the Plaintiff has not provided facts in her complaint or explained in her briefings what ultimately revealed the discriminatory nature of her home loan, let alone whether the discrimination was revealed within the limitations period. Indeed, the statistics of discrimination against women in housing that the Plaintiff cites in her complaint were published in 2006, the year the statute of limitations started running. The Plaintiff's inability to plead any facts showing the Defendants' affirmative concealing of discrimination within the limitations period renders any equitable tolling of the statute of limitations inappropriate.

The Plaintiff's reliance on Hargraves v. Capital City Mortgage Corp., 140 F. Supp. 2d 7 (D.D.C. 2000), another case involving the FHA and its statute of limitations, does not change the outcome here. The Hargraves court noted that the continuing violation doctrine applies "where the type of violation is one that could not reasonably have been expected to be made the subject of the lawsuit when it first occurred because its character as a violation did not become clear until it was repeated

during the limitations period." Id. at 18. In Hargraves, the plaintiffs alleged that the continuing acts of loan servicers and assignees under a discriminatory loan practice were separate acts of discrimination capable of extending the limitations period. Id. at 18-19. Unlike here, the plaintiffs in Hargraves alleged specific conduct by the defendants occurring after the loans were issued. See id. For instance, the plaintiffs alleged that the defendants "churn[ed] loans through multiple foreclosures on the same property, [charged] higher than average rates of foreclosure, and [imposed] fraudulent fees in penalties on the loans they service." Id. at 18. The court concluded that the plaintiffs had adduced sufficient facts describing conduct occurring after the loans originated to utilize the continuing violation doctrine. Id.

Here, conversely, the Plaintiff's allegations as to ongoing acts of discrimination which would allow her to utilize the continuing violation doctrine are insufficient. Indeed, the pleadings addressing discrimination in any way do so only in a broad and general fashion. Paragraphs 23-28 of the complaint recite statistics stating that women were 32% more likely than men to receive subprime rate loans and 41% more likely to receive higher-cost subprime loans. (See Am. Compl. ¶¶ 23-28). These do not represent specific, ongoing acts of discrimination against the Plaintiff. Additionally, the Plaintiff broadly states that the "Defendants discriminated against Plaintiff based on gender, Defendants induced Plaintiff into obtaining a mortgage loan Defendants

knew that given the Plaintiff's financial circumstances, [she] could not repay." (Am. Compl. ¶ 37). This allegation is conclusory and does not state a specific fact concerning the Defendants' conduct after the loan was issued. The continuing violation doctrine necessarily requires allegations of conduct occurring after the discriminatory loan was issued. See Hargraves, 140 F. Supp. 2d at 18. The Plaintiff states that the "Defendants approved and condoned Brightstone's active attempts to manipulate Plaintiff into a higher percentage point and other unfavorable terms due to the fact she was a female." (Am. Compl. ¶ 38). Again, this allegation is conclusory and too vague to invoke the continuing violation doctrine. It is unclear which Defendants "approved and condoned" discriminatory activity and, more importantly, what specific conduct served to approve the discrimination.

The Plaintiff also alleges that the conduct of Defendant Midland should have delayed the statute of limitations. The Plaintiff states that she sent Midland a Qualified Written Request ("QWR") seeking disclosures about possible discriminatory practices in the issuing of the loan on July 31, 2009. (Am. Compl. ¶ 77 & Ex. H). The Plaintiff alleges that Midland did not respond to the QWR and that "[t]he failure of Midland to timely provide the documents requested in the Qualified Written Request represent[s] active concealment of the discriminatory practices of the Defendants." (Am. Compl. ¶ 78). Outside of the Plaintiff's conclusory allegation,

there is no indication that Defendant Midland participated in any discriminatory conduct. Midland contends it properly responded to the QWR and notes that a "QWR must include requests for information about the servicing of the loan, not complaints about disclosures or non-disclosures made at the time of closing." See Jones v. Vericrest Fin., Inc., No. 1:11-cv-2330-TWT-CCH, 2011 U.S. Dist. LEXIS 151458, at *44 (N.D. Ga. Dec. 7, 2011). Here, many of the Plaintiff's requests in the QWR relate to disclosures surrounding her home loan. (See Am. Compl. Ex. H). Accordingly, Midland's response (or non-response) to the QWR cannot continue an allegedly discriminatory violation committed at the loan's origination. Further, Federer sent the QWR to Midland on July 31, 2009, after the statute of limitations had expired.

Many of the allegations in the complaint simply are not specific enough to invoke the continuing violation doctrine. The Plaintiff states that "[t]he discriminatory acts of Defendants against Plaintiff continued after the property was purchased as Defendants are engaged in a pattern and practice of violating rights under the FHA and Equal Credit Opportunity Act." (Am. Compl. ¶ 72). This allegation is a legal conclusion that does not plead a specific fact. The Plaintiff further alleges that, "[d]espite knowledge of the discriminatory practices, Defendants failed to cease collection activities, including foreclosure actions, and negative credit

reporting regarding the discriminatory loan... Said discriminatory practices continue to the present." (Am. Compl. ¶¶ 79-80). Likewise, the Plaintiff argues that the sending of the notices of default in May 2012 constituted a continuing violation. (Pl.s' Br. in Resp. to Wells Fargo and HSBC's Mot. to Dismiss, at 11). According to this logic, and even accepting the Plaintiff's conclusory allegations about the Defendants' knowledge, *any* loan made with discriminatory animus would be subject to the continuing violation doctrine provided that subsequent assignees and servicers invoke their rights under the loan, rendering the statute of limitations meaningless. See Ohio Civil Rights Comm. v. Wells Fargo Bank, N.A., No. 1:11-cv-623, 2012 U.S. Dist. LEXIS 52829, at *13-14 (N.D. Ohio April 16, 2012) (noting that allowing the continuing violation doctrine to apply each time a payment is made on a discriminatory loan would render the statute of limitations superfluous). The Plaintiff simply has not alleged any discriminatory act made after the loan was issued that could invoke the continuing violation doctrine.

Lastly, the Plaintiff contends that the statute of limitations should be tolled for her FHA claims from October 2, 2009 through December 21, 2011 pursuant to 42 U.S.C. § 3613(a)(1)(B). That provision states that the computation of the two-year statute of limitations "shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge

under this title based upon such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B). The Plaintiff filed a complaint alleging violations under the FHA on October 2, 2009, received acknowledgment from HUD on October 5, 2010, and received notice of the complaint's dismissal on December 21, 2011. (See Pl.'s Resp. to Def. Midland's Mot. to Dismiss, at 16). While the Defendants contend the Plaintiff's complaint was not made under the FHA and therefore could not toll the limitations period, the Court need not resolve that issue because even if the period was tolled from October 2009 to December 2011, the statute had already expired on March 17, 2008, two years after the Plaintiff received the allegedly discriminatory loan.

The Plaintiff has not pled facts showing that the continuing violation doctrine should apply to her claims under the FHA. Accordingly, the Plaintiff's claims are time-barred and should be dismissed.

      B.    <u>The Plaintiff's Claims Under the Equal Credit Opportunity Act are Time-Barred</u>

The parties dispute whether the extension of the statute of limitations for the ECOA contained within the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law No. 111-203, Title X, Subtitle H, §§ 1085(1) and (5-7), applies to the loan at issue. The 2010 act extended the statute of limitations to five years from two years. See Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law. No. 111-203, §§ 1085(1), (5), & (7) (2010). The Court need not

resolve whether the five year limitations period or the two year limitations period should apply, because the Plaintiff's claim is time-barred under a five-year limitation.

The Plaintiff executed the loan documents on March 17, 2006. Under the ECOA, "the violation occurs, and the limitations period begins to run, upon the signing of the note." Oliver v. LIB Props., Ltd., No. 1:10-cv-0539-TWT-JFK, 2010 U.S. Dist. LEXIS 72692, *20 (N.D. Ga. June 21, 2010), app'v by, adopted by 2010 U.S. Dist. LEXIS 72811 (N.D. Ga. July 20, 2010) (quoting Stern v. Espirito Santo Bank of Florida, 791 F. Supp. 865, 868 (S.D. Fla. 1992)). As discussed above, the Plaintiff has not pled sufficient facts to invoke the continuing violation doctrine to delay the statute of limitations for her FHA claims. The same reasoning extends to her claims under the ECOA. The Plaintiff was issued the allegedly discriminatory loan on March 17, 2006, and she filed the instant case on July 18, 2012, over five years after the limitations period began to run. Accordingly, the Plaintiff's claim under the ECOA should be dismissed.

IV. Conclusion

For the reasons set forth above, Defendants HSBC Bank USA, N.A. and Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. 18] is GRANTED, Defendant Midland Mortgage Co.'s Motion to Dismiss [Doc. 19] is GRANTED, and Defendant Brightstone Mortgage, Inc.'s Motion to Dismiss [Doc. 21] is GRANTED.

SO ORDERED, this 21 day of November, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge